| |  |
|---|---|
| MICHAEL J. REDENBURG, ESQ. PC<br>Michael Redenburg, Esq. (NY #MR4662)<br>11 Park Place, Suite 817<br>New York, NY 10007<br>Telephone: (212) 240-9465<br>Facsimile: (917) 591-1667 | |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOEL DELORBE-BELL,**<br><br>                                                **Plaintiff,**<br>v.<br><br>**THE CITY OF NEW YORK, NYPD Officer Rafael Morales (Tax ID #944827), NYPD Officer Matthew Manchester (Tax ID #951959) and NYPD Officer Justin Gelband (Tax ID #952771), individually and in their official capacities.**<br><br>                                                **Defendants.** | **Second Amended Complaint**<br><br>**JURY TRIAL DEMANDED**<br><br>**15-cv-02344 (LGS)** |

**PRELIMINARY STATEMENT**

1. Plaintiff brings this civil rights action against the City of New York, NYPD Officer Rafael Morales, NYPD Officer Matthew Manchester and NYPD Officer Justin Gelband, alleging that defendants violated his rights under 42 U.S.C. § 1983, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution by falsely arresting him; for NYPD Officer Rafael Morales' use of excessive force against him; and for the failure of NYPD Officers Matthew Manchester and Justin Gelband to intervene and prevent such conduct. Plaintiff seeks compensatory and punitive damages, attorney's fees and costs and such other and further relief as the Court deems just and proper.

**JURISDICTION AND VENUE**

1

2. This action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth, Fifth & Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §1331 and §1343.

3. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391 (b) and (c) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and because some or all of the defendants reside in this District.

## DEMAND FOR A JURY TRIAL

4. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury in this action.

## PARTIES

5. Plaintiff Joel Delorbe-Bell ("Plaintiff" or "Mr. Delorbe-Bell") is a twenty-six (26) year old man who is a resident of Bronx County, in the City and State of New York.

6. The City of New York is a municipal corporation organized under the laws of the State of New York.

7. Defendants Rafael Morales, Matthew Manchester and Justin Gelband are members of the New York City Police Department ("NYPD") who were so employed on January 20, 2015. Defendants Rafael Morales, Matthew Manchester and Justin Gelband were acting under color of state law and in their capacities as members of the NYPD at all relevant times. Defendants Rafael Morales, Matthew Manchester and Justin Gelband are sued in their individual and official capacities.

## STATEMENT OF FACTS

8. The Incident which is the subject of the instant Complaint took place at approximately 4:10 p.m., on or near West 165th Street between Woodycrest Avenue and Anderson Avenue, in Bronx County on January 20, 2015.

9. At the above mentioned time and in the above-mentioned place, Plaintiff was in the front passenger seat of his friend's car when a marked NYPD vehicle signaled for them to pull over to the side of the road.

10. Two uniformed NYPD officers then exited the marked NYPD car; one approached the driver's side of the vehicle and NYPD Officer Rafael Morales approached the passenger side of the vehicle where Plaintiff was.

11. Defendants Rafael Morales, Matthew Manchester and Justin Gelband then instructed that the car windows be rolled down and the driver of the vehicle complied with the Officers' instructions, lowering the car windows.

12. Next the Officers explained that the reason they stopped the vehicle was for tinted windows.

13. NYPD Officer Rafael Morales then instructed Plaintiff to unfasten his seatbelt and exit the vehicle.

14. As Plaintiff was complying with the instructions of NYPD Officer Rafael Morales, Officer Morales unlocked the car door and grabbed Plaintiff's right hand, causing Plaintiff's phone to fall to the ground. Plaintiff had been trying to record the unfolding Incident with his cell phone which had been in his left hand.

15. Next, NYPD Officer Rafael Morales pushed Plaintiff against the police car and searched Plaintiff. The officer's search of Plaintiff's person did not reveal any weapons, drugs or contraband.

16. Nevertheless, NYPD Officer Rafael Morales handcuffed Plaintiff and led him to the police vehicle.

17. NYPD Officer Rafael Morales then slammed Plaintiff against the police vehicle, kneed Plaintiff in the groin and transported him to the 44th Precinct.

18. Plaintiff was held at the 44th Precinct for about two (2) hours and then released with a pink ticket, charging him with Disorderly Conduct.

19. As such, Plaintiff retained counsel at the cost of one thousand ($1,000.00) dollars to represent him in criminal court.

20. At the first court appearance on March 23, 2015, the matter was completely dismissed in the entirety.

21. Since the Incident complained of herein, Plaintiff has sought, received and continues to receive treatment for the injuries he sustained as a result of the Incident at the hands of the NYPD Officer Rafael Morales.

22. As a result of the foregoing, Plaintiff suffered an unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, physical injury and pain; and incurred attorneys' fees in the amount of $1,000.00 – all to his detriment and loss.

## FIRST CLAIM
*Unlawful Search and Seizure*

23. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

24. Defendants Rafael Morales, Matthew Manchester and Justin Gelband violated the Fourth and Fourteenth Amendments because they stopped and searched Plaintiff without reasonable suspicion to believe that a crime was being committed or was about to be committed.

25. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein before alleged.

4

26. As a result of the foregoing, Plaintiff suffered an unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, physical injury and pain; and incurred attorneys' fees in the amount of $1,000.00 – all to his detriment and loss.

## SECOND CLAIM
*False Arrest*

27. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

28. NYPD Officer Rafael Morales violated the Fourth and Fourteenth Amendments because he arrested Plaintiff without probable cause to believe that a crime or violation had been committed or was about to be committed.

29. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
*Failure to Intervene*

30. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

31. NYPD Officers Matthew Manchester and Justin Gelband were present and observed the unlawful conduct as against Plaintiff; they had an opportunity to prevent such conduct and had a duty to intervene and prevent such conduct- but consciously failed and refused to intervene.

32. Accordingly, NYPD Officers Matthew Manchester and Justin Gelband who failed to intervene violated the Fourth, Fifth and Fourteenth Amendments.

33. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CLAIM

## *UNREASONABLE FORCE UNDER 42 U.S.C. §1983*

34. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

35. NYPD Officer Rafael Morales violated the Fourth and Fourteenth Amendments when he slammed Plaintiff against the police vehicle and kneed Plaintiff in the groin. This degree of force was unreasonable because it was not necessary under the circumstances especially in light of the fact that Plaintiff was unarmed at the time.

36. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the injuries and damages hereinbefore alleged.

## **FIFTH CLAIM**
## *MONELL CLAIM*

37. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

38. The City of New York is a "person" within the meaning of 42 U.S.C. §1983.

39. The excessive force used by NYPD Officer Rafael Morales against Plaintiff, in his capacity as an NYPD Police Officer, is so permanent and well settled that the constructive acquiescence of the City's / NYPD's senior policy-making officials is implied.

40. The City is liable for the damages suffered by Plaintiff as a result of the conduct of their employees, in that, after learning of their employees' violation of Plaintiff's and numerous other citizens constitutional rights, they have done nothing to stop such conduct; they failed to remedy the wrong; they have created a policy and/or custom under which such unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

41. Examples of the permanency of the City's police officers using excessive force against unarmed civilians include, but are certainly not limited to, the well publicized death of an unarmed black man on Staten Island, Eric Garner, after police placed Mr. Garner in a choke-hold for selling untaxed cigarettes, ultimately resulting in Mr. Garner's death; and the recent incident in New York which resulted in Corey Greene being required to undergo surgery to restore blood flow to his genitals after an NYPD Officer kicked him between the legs during a criminal investigation.

42. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; and that deliberate indifference caused the violation of Plaintiff's constitutional rights in this case.

43. In a sixty-two (62) page report issued by the New York City Department of Investigation/Office of the Inspector General ("OIG-NYPD Report") on October 1, 2015, it was concluded that, "Historically, NYPD has frequently failed to discipline officers who use force without justification." (Ex. A, p. 2)

44. The OIG-NYPD Report further found, "NYPD's current use-of-force policy is vague and imprecise, providing little guidance to individual officers on what actions constitute force. NYPD's current use-of-force Patrol Guide procedure, which is barely more than a page of text, is completely silent on what actions constitute "force." The Patrol Guide likewise prohibits "excessive force" while offering no clarity on what constitutes "excessive force." (Ex. A, p. 3)

45. As the OIG-NYPD Report makes clear, it is the Department's failure to discipline its officers that use excessive force without justification that emboldened NYPD Officer

Rafael Morales to use excessive force against Plaintiff, causing Plaintiff's physical injuries that required medical attention and continued medical treatment.

46. The OIG-NYPD Report also found that, "NYPD frequently failed to impose discipline even when provided with evidence of excessive force (Ex. A, p. 47)," which further emboldened NYPD Officer Rafael Morales to use the unreasonable and excessive force he did, when he slammed Plaintiff against the police vehicle and kneed Plaintiff in the groin - causing Plaintiff physical injury, requiring medical attention and continued medical treatment.

47. The unreasonable force used against Plaintiff is attributable to the, "NYPD's current use-of-force policy [which] is vague and imprecise, providing little guidance to individual officers on what actions constitute force." (Ex. A, p. 3)

48. Within the OIG-NYPD Report (Ex. A, p. 34), it was concluded that, "The Patrol Guide articulates a policy on the need for the application of force to be proportional to the circumstance and imposes an affirmative duty on officers to prevent the unnecessary escalation of force when it appears excessive. However, it does not articulate a policy on the importance of <u>reducing</u> the likelihood that force is needed in a given situation."

49. It is the City's failure to articulate a policy on the importance of reducing the likelihood that force is needed, that directly led to NYPD Officer Rafael Morales' unnecessary force against Plaintiff, which was disproportionate to the circumstances, given that Plaintiff was unarmed.

50. It was the City's failure to train its officers de-escalation, that directly led to NYPD Officer Rafael Morales' use of force against Plaintiff, which was unreasonable, given that Plaintiff was unarmed. The OIG-NYPD Report found that, "there is also too little focus

on de-escalation during NYPD's training sessions. NYPD spends only a portion of a four-and-a-half-hour course teaching de-escalation, out of 468 classroom hours- less than one percent of the curriculum." (Ex. A, p. 43-44).

51. The City's custom and practice of failing to train its officers to de-escalate encounters with the public, led directly to Officer Morales' decision to use unreasonable force against Plaintiff on January 20, 2015. As the OIG-NYPD Report found, "The NYPD's Patrol Guide does not properly instruct officers to de-escalate encounters with the public." (Ex. A., p. 3).

52. The Incident that Plaintiff complains of is not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of the City's police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obvious illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist, which implies the constructive acquiescence of the City's and NYPD's senior policy-making officials.

53. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights; injury to its citizens and even the death of its citizens. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate Plaintiff's civil rights without fear of reprisal.

54. Plaintiff has been damaged as a result of the City's constructive acquiescence in the permanent and well-settled use of excessive and unnecessary force by the NYPD's officers against unarmed civilians throughout the City.

55. As a result of the foregoing, Plaintiff suffered an unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, physical injury and pain requiring continued medical treatment; and incurred attorneys' fees in the amount of $1,000.00 – all to his detriment and loss.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

a. Compensatory damages against all defendants, jointly and severally;

b. Punitive damages in an amount to be determined by a jury;

c. Reasonable attorneys' fees and costs; and

d. Such other relief as this Court shall deem just and proper.

Dated: February 4, 2016
New York, NY

                                                          **/s/**
Michael J. Redenburg (NY #MR4662)
MICHAEL J. REDENBURG, ESQ. PC
11 Park Place, Suite 817
New York, NY 10007
mredenburg@mjrlaw-ny.com
1-212-240-9465 (Phone)
1-917-591-1667 (Fax)