UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOEL DELORBE-BELL,

                             Plaintiff,

           -against-

CITY OF NEW YORK, et al.,

                          Defendants.
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/12/2016

15 Civ. 2344 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Joel Delorbe-Bell asserts claims against the City of New York (the "City") and three individually named New York Police Department ("NYPD") officers arising out of his January 20, 2015, arrest. Before the Court is the City's motion to dismiss the Second Amended Complaint's ("SAC") claim of municipal liability pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the City's motion is GRANTED.

**I.    BACKGROUND**

       The following facts are taken from the SAC and assumed to be true for the purposes of this motion. *See Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

       Delorbe-Bell was arrested in the Bronx on January 20, 2015, at approximately 4:10 p.m. Plaintiff was a passenger in a friend's car when a marked NYPD vehicle signaled for the car to pull over. At the side of the road, two NYPD officers approached the car, instructed Plaintiff and his friend to roll down their windows, and explained that they had stopped the car because its windows were tinted. One of the officers, Defendant Rafael Morales, instructed Delorbe-Bell to unfasten his seatbelt. Morales then unlocked the car door, grabbed Plaintiff's right hand and pulled him out of the car. Morales pushed Plaintiff against the police car and searched him, placed him in handcuffs, slammed him against the police vehicle and kneed him in the groin.

Plaintiff was brought to the police station for the 44th Precinct, where he was held for about two hours and charged with disorderly conduct before being dismissed. The matter was later dismissed at Delorbe-Bell's first court appearance on March 23, 2015.

The SAC references publicized "[e]xamples of the permanency of the City's police officers using excessive force against unarmed civilians" and incorporates certain findings contained in an October 1, 2015, report by the New York City Department of Investigation/Office of the Inspector General ("the OIG Report"). Plaintiff claims that this report establishes that the NYPD has failed to discipline officers who used force without justification, and that the NYPD's policies were vague, imprecise or unclear.

On March 30, 2015, Delorbe-Bell filed suit. The SAC asserts claims under 42 U.S.C. § 1983 for (1) unlawful search and seizure, (2) false arrest, (3) failure to intervene and (4) "unreasonable force" against the individual officers, and (5) municipal liability against the City. On February 18, 2016, the City moved to dismiss the SAC's claim for municipal liability.

## II.     STANDARD

"On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn*, 795 F.3d at 306. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[D]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (internal quotation marks and alteration omitted).

## III.     DISCUSSION

The SAC does not allege any "official" municipal policy that violated Plaintiff's constitutional rights.  *See Pembauer v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986) (describing "official policy" as "formal rules or understandings . . . intended to . . . establish fixed plans of action to be followed under similar circumstances" and decisions "tailored to a particular situation and not intended to control decisions in later situations").  Instead, Plaintiff argues the SAC adequately pleads that the City was deliberately indifferent because it failed to (1) "properly train its officers on what constitutes excessive force," (2) "discipline its officers that use excessive force" and (3) "articulate a policy on the importance of reducing the likelihood that force is needed in a given situation."  The SAC fails to plead a viable claim of municipal liability under any theory, and Plaintiff's claim against the City is dismissed.

Municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  Pursuant to the Supreme Court's decision in *Monell*, municipalities may be liable only if "action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also id.* at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Connick*, 563 U.S. at 61.

"Where a city's official policy is constitutional," municipal liability may still exist if "the unconstitutional application might itself be considered municipal policy."  *Amnesty Am. v. Town*

*of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004). "Such circumstances may be found, for example, where the city is aware that its policy may be unconstitutionally applied by inadequately trained employees but the city consciously chooses not to train them, or where the city's official policy on the reasonable use of force in arrests is valid, but the city's actual practice is to use excessive force." *Id.* at 125–26 (internal citation omitted). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985)). In such situations, "a municipality's failure to train its employees in a relevant respect must amount to 'to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

To establish municipal liability for deliberate indifference, the plaintiff must show three elements:

> First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation. Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

*Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (internal quotation marks and citations omitted); *see also Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997) (internal quotation marks omitted). "[A] city's failure to train its subordinates satisfies the policy or custom requirement only where the need to act is so obvious,

and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).

Delorbe-Bell's arguments concerning municipal liability rely exclusively on excerpts taken from the OIG Report. Plaintiff quotes the report for the proposition that "NYPD has frequently failed to discipline officers who use force without justification." Plaintiff similarly cites to the OIG Report to argue that the City was deliberately indifferent because it lacked a formal policy on the importance of officers' reducing the likelihood that force would be needed, and because the NYPD's training sessions spent insufficient time on "de-escalation."

Plaintiff's attempts to establish *Monell* liability through the use of the OIG Report are unavailing, as the report's findings -- standing alone -- are insufficient to create a plausible inference of the City's deliberate indifference. The OIG Report concludes that the 207 substantiated allegations of excessive force between 2010 and 2014 represent "a notably modest number, given the size of NYPD, and a positive indication of the NYPD's restraint." With respect to the failure to discipline claim, the data from the report shows that the NYPD imposed discipline in the majority of cases where allegations of excessive force were substantiated. Of the 104 allegations reviewed in the report's review of the NYPD's disciplinary system, approximately one-third resulted in the officer receiving "the most serious disciplinary measure [that] can be filed against an officer." The frequency and severity of discipline described in the OIG Report undermine Plaintiff's assertion that "[t]he NYPD's failure to discipline officers who use force without justification is tantamount to deliberate indifference, because . . . it is the same as the City tacitly endorsing this behavior."

The OIG Report similarly undermines Delorbe-Bell's failure to train claim. Although the OIG Report finds that "[t]here is . . . too little focus on de-escalation during NYPD's training sessions" and recommends implementing a stand-alone course on de-escalation and tactical communication, it also describes NYPD training courses titled "Use of Force" and "Policing Professionally" and notes that the number of hours the NYPD spends on "use-of-force scenario-based training" is "roughly on par" with the national average. Similarly, the report encourages the NYPD to adopt a policy that emphasizes the importance of reducing the likelihood that force is needed in a given situation, but acknowledges that the NYPD's Patrol Guide already "articulates a policy on the need for the application of force to be proportional to the circumstances and imposes an affirmative duty on officers to prevent the unnecessary escalation of force when it appears excessive."

While the OIG Report identifies specific areas for improvement in NYPD training programs, it does not describe deficiencies that are "so obvious" or "so likely to result in a deprivation of federal rights" that they would support a plausible inference of deliberate indifference. *Reynolds*, 506 F.3d at 192; *see generally City of Canton*, 489 U.S. at 392 ("In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident.").

Because Delorbe-Bell does not allege any official municipal policy that violated his constitutional rights or plead deliberate indifference on the part of the City, Plaintiff's municipal liability claim is dismissed.

## IV.     CONCLUSION

For the foregoing reasons, the City's motion is GRANTED.  The Clerk of Court is directed to close the motion at Dkt. No. 36 and to terminate the City of New York as a defendant in this case.

SO ORDERED.

Dated: April 12, 2016
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**